In re Thurman L. KEENOM, Candace
J. Keenom, Debtors.

Thurman L. Keenom, Candace
J. Keenom, Movants,

v.

All American Marketing, Respondent.

Bankruptcy No. 97–51503–JDW.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Feb. 1, 1999.

Lynn Y. Hamilton, Warner Robins, GA, for debtors.

Jason M. Orenstein, Macon, GA, for All American Marketing.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Reopen Chapter 7 Case by Thurman L. and Candace J. Keenom ("Debtors"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors have filed this motion to reopen their Chapter 7 case for the purpose of amending their schedules and list of creditors to include an omitted debt to All Ameri-can Marketing. By doing so, they hope to obtain a discharge of this debt. The facts of the case are as follows:

Thurman L. Keenom was regional manager for Home Entertainment Systems, a business owned by his step-brother. Mr. Keenom was responsible for advertising. In 1996, in an effort to better market the company, Mr. Keenom entered into a contract with All American Marketing ("All American"). Though the contract lists Home Entertainment Systems as the company for which marketing would be provided, it was signed by Mr. Keenom in the space provided for the client's authorized signature. Despite this marketing effort, Home Entertainment Systems went out of business without paying for All American's services.

On April 4, 1997, Debtors jointly filed for relief from their debts under Chapter 7 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 521(1), Debtors filed a list of creditors and a schedule of assets and liabilities. However, Debtors failed to include in their schedule the debt owed to All American pursuant to the contract signed by Mr. Keenom and failed to include All American as a creditor. Debtors did not list this debt because they believed they were not responsible for paying it. Rather, they believed that because All American was advertising Home Entertainment Systems, Mr. Keenom's step-brother, as owner of Home Entertainment Systems, was responsible for paying the debt, and Debtors further assumed he had done so.

On April 10, 1997, a notice was sent to all listed creditors informing them that Debtors had filed bankruptcy and notifying them of the date set for the section 341 meeting of creditors. This notice also included a statement pursuant to Bankruptcy Rule 2002(e) [1] stating that it appeared from the schedules that Debtors' estate contained no assets from which payment could be made to unsecured creditors, and thus directed creditors not to file a proof of claim until they received notice to do so. In addition, the notice informed

---

1. Rule 2002(e) provides as follows:

 In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a state-ment to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

creditors that the deadline for filing a complaint objecting to discharge of debtor or to determine dischargeability of certain types of debts was July 7, 1997. Because they were not listed as a creditor, All American did not receive this or any other notice from the bankruptcy court. No assets were ever discovered from which unsecured creditors could be paid and, thus, no deadline for filing proofs of claim was ever set. Debtors received their discharge on July 14, 1997, and on May 27, 1998, their Chapter 7 case was closed.

Two months before Debtors' case closed, on March 20, 1998, unaware that Debtors had filed bankruptcy, All American sent Mr. Keenom a letter informing him that no payment had been received for the services they provided to Home Entertainment Systems and that if the account was not satisfied within fifteen days of his receiving the letter the account would be turned over to an attorney for collection. Mr. Keenom contacted his attorney who, believing his Chapter 7 case had already been closed, advised him to reopen his case and amend his schedules to include the debt to All American. However, still believing that he was not liable for the debt, Mr. Keenom chose not to reopen his case, but rather chose to defend against collection of the debt, if necessary, in a state court proceeding. On June 19, 1998, Mr. Keenom received a summons from the Magistrate Court of Houston County notifying him that All American had filed suit to collect on the account. In his answer and in his pro se appearance before the magistrate, Mr. Keenom's defense was twofold. First, he denied personal liability on the claim alleging that he was acting as an agent for his stepbrother's business. Second, he informed the court of his bankruptcy case, asserting it as a defense to liability. Ultimately, the magistrate found Mr. Keenom was personally liable for the debt and entered judgment in favor of All American. No evidence was offered in this Court as to any oral or written findings of fact or conclusions of law which may have been entered in the magistrate court.

Debtors now seek to reopen their Chapter 7 case pursuant to 11 U.S.C. § 350(b) to amend their schedule of debts and list of creditors to obtain a discharge of this debt. All American opposes Debtors' motion asserting that Debtors acted in bad faith by not listing a known debt when they originally filed their schedule, and, further, that they have been prejudiced by the fact that they incurred five-hundred dollars in attorney fees and court costs while attempting to collect this debt from Debtors, because they never received notice of Debtors' bankruptcy.

*Conclusions of Law*

The Bankruptcy Code provides that a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Debtors assert that section 350(b) is satisfied because reopening the case to amend the schedules to include the debt owed to All American will enable them to obtain a discharge of the debt, thus according them relief. However, the Court finds that Debtors' position, while finding support in case law,[2] is based on an erroneous assumption that reopening a case and amending schedules will affect the dischargeability of, or, even more, is necessary to discharge, an omitted debt. To the contrary, whether the debt to All American was discharged was determined at the time Debtors' Chapter 7 case closed, and the mere amending of Debtors' schedules will do nothing to affect that result.

Careful analysis of the discharge provision of the Bankruptcy Code contained in section 727 and the exceptions to discharge provisions contained in section 523 require the conclusion that reopening a case simply to amend schedules does nothing to affect the discharge of a debt. *E.g. Judd v. Wolfe*, 78 F.3d 110, 115 (3d Cir.1996); *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir.1993); *In re Mendiola*, 99 B.R. 864, 865 (Bankr.N.D.Ill. 1989); *In re Anderson*, 72 B.R. 495, 497 (Bankr.D.Minn.1987). This conclusion was recently reached by the Court of Appeals for

---

2. *See e.g. Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir.1986); *Stark v. St. Mary's*

*Hosp. (In re Stark)*, 717 F.2d 322 (7th Cir.1983).

the Third Circuit in *Judd.* Because the Court finds the analysis by the Third Circuit to be clear and complete, the Court adopts the following findings of the Third Circuit:

> Section 727(b) of the Bankruptcy Code defines the scope of a Chapter 7 debtor's discharge: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section *discharged* [sic] *the debtor from all debts* that arose before the date of the order for relief under this chapter...." 11 U.S.C. § 727(b). (Emphasis added.) As other courts have observed, "The operative word in this section is 'all.'" *In re Beezley,* 994 F.2d 1433, 1435 (9th Cir.1993) (citing *In re Mendiola,* 99 B.R. 864, 865 (Bankr.N.D.Ill.1989) (regarding § 727(b), a prebankruptcy debt is discharged whether or not it is scheduled); *In re Stecklow,* 144 B.R. 314, 317 (Bankr. D.Md.1992) ("breadth of the discharge" under section 727 is "comprehensive") and *In re Thibodeau,* 136 B.R. 7, 8 (Bankr. D.Mass.1992) ("§ 727(b) itself makes no exception for unlisted debts")). Because section 727(b), on its face, does not create an exception for unlisted or unscheduled debts, every prepetition debt is discharged under section 727(b) subject to the provisions of section 523(a)(3). We thus turn to section 523(a)(3).
>
> Section 523(a)(3) creates two categories of unscheduled debts: (1) those that are "of a kind specified in paragraphs (2), (4), or (6) of this subsection," and (2) those that are not of such kind.[3] Those debts that are not of the kind specified in paragraphs (2), (4), or (6) of section 523(a) are resolved

by reference to section 523(a)(3)(A).[4] [Footnote added.]

> Section 523(a)(3)(A) excepts from discharge certain debts that were:
>
>> Neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing ... [sic]
>
> Because this is a "no-asset" Chapter 7 case, [Rule 2002(e), *supra n. 1,* allows the court to dispense with the necessity of filing proofs of claim. Thus,] the time for filing a claim has not, and never will, expire unless some exempt assets are discovered; thus, section 523(a)(3)(A) cannot be applied in [Debtors'] circumstances. [Citation omitted.] Because section 523(a)(3)(A) does not apply here, [Debtors'] debt to [All American] was discharged by operation of law at the time of [Debtors'] discharge on [July 14, 1997], unless [their] debt to [All American] falls under sections 523(a)(2), (4), or (6). [References to this case added for clarity.]
>
> Debts listed in sections 523(a)(2), (4)[sic] and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by "false pretenses, false representation or actual fraud ..." (523(a)(2)); debts incurred by "fraud or defalcation while acting as a fiduciary ..." (523(a)(4)); and debts "for willful and malicious injury ..." (523(a)(6)). Section 523(a)(3)(B) excepts from discharge "intentional tort" debts that were not listed. Since section 523(c) provides that the dischargeability of these debts must be determined by the bankruptcy court and Bank-

---

3. Section 523(a) provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled ... in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless

such creditor had notice or actual knowledge of the case in time for such filing and request[.]

4. In fact, section 523(a)(3) implicitly creates a third category of debts not of the kind specified in subsections (a)(2), (4), or (6) that are not resolved by subsection 523(a)(3)(A). These debts (e.g. alimony and child support) "are always nondischargeable regardless of whether they are omitted." Lauren A. Helbling & Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense To Nondischargeability Under Bankruptcy Code § 523(A)(3)(A): Making Sense Of The Confusion Over Reopening Cases And Amending Schedules To Add Omitted Debts,* 69 Am.Bankr.L.J. 33, 39 (Winter, 1995).

ruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523(a)(3)(B) preserves the right of these creditors to litigate the dischargeability of their debts.[5] [Footnote added.]

*Judd,* 78 F.3d at 113–14.

For creditors holding intentional tort claims, the right to file a proof of claim exists parallel to the creditor's right to secure an adjudication of non-dischargeability. Accordingly, section 523(a)(3)(B) excepts intentional tort debts from discharge notwithstanding the creditor's failure to file a timely complaint under section 523(c), if the creditor did not know about the case in time to file such a complaint. 11 U.S.C. § 523(c).

*Judd,* 78 F.3d at 114 n. 9.

For most creditors, the fundamental right enjoyed in bankruptcy is the right to file a proof of claim because filing a claim is obviously necessary in order to participate in the distribution of the estate's assets. [Footnote omitted]. *In re Stark,* 717 F.2d 322 (7th Cir.1983). Section 523(a)(3)(A) honors this right, by excepting from discharge, debts owed to creditors who did not know about the case in time to file a claim. In a case where there are no assets to distribute, however, the right to

file a proof of claim is a hollow one. [Footnote omitted.] An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim. Thus, in a no-asset Chapter 7 case where no bar date has been set, we conclude that there would be no purpose served by reopening the case to add an omitted creditor to the bankrupt's schedules. If the debt at issue is not a debt described under section 523(a)(2), (4)[sic] or (6), the debt has been discharged by virtue of section 727(b), whether or not it was listed. If, however, the debt is a debt that falls under sections 523(a)(2), (4)[sic] or (6), the debt is not discharged by virtue of section 523(a)(3)(B).

*Judd,* 78 F.3d at 114–15.

Applying the Third Circuit's conclusion, that reopening a no-asset case simply to amend schedules in order to obtain a discharge is a futile effort, to a case arising within the Eleventh Circuit is complicated by the Eleventh Circuit's ruling on this issue in *Samuel v. Baitcher (In re Baitcher),* 781 F.2d 1529 (1986). In *Baitcher,* the Eleventh Circuit decided an appeal based on facts similar to those in this case. The debtor had

---

**5.** Read literally, section 523(a)(3)(B) would not apply to no-asset cases. This is because the plain language of section 523(a)(3)(B) provides that a debt of the kind specified in subsections (a)(2), (4), or (6) is not discharged if the debt is "neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim *and* timely request for determination of dischargeability of such debt under one of such paragraphs." 11 U.S.C. § 523(a)(3)(B) (emphasis added). Thus, two conditions must be satisfied in order for a fraud-type debt to be found nondischargeable: first, the nonlisting of the debt must have prevented the creditor from having timely filed a proof of claim, and second, it must have prevented the creditor from timely filing a complaint for determination of dischargeability of the debt. As previously explained, in a no-asset case, the time to file a proof of claim never expires. Thus, the creditor would never be prevented from timely filing a proof of claim and the first condition would never be satisfied. Section 523(a)(3)(B) would then have no more meaning in a no-asset case than section 523(a)(3)(A). According this plain meaning to section 523(a)(3)(B) would create the inequitable result of allowing a fraud-type debt to be discharged in a no-asset case simply

where the debtor omitted the debt from its schedules. Congress would not have intended to leave this tool available to the unscrupulous debtor.

Recognizing this result, the Bankruptcy Court for the District of Colorado looked to the legislative history of section 523(a)(3) and found that the section was meant to except "debts from discharge if they were 'not scheduled in time to permit timely action by the creditor to protect his rights.'" *In re Padilla,* 84 B.R. 194, 196 (Bankr. D.Colo.1987) (quoting H.R.REP. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6319; S.REP. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5863–65). Therefore, to comport with the clear congressional intent, the court read the "and" as an "or" so that a fraud-type debt is nondischargeable if the creditor is prevented from protecting its rights by being prevented from timely filing a complaint to determine the dischargeability of the debt alone. *Id.* at 196. This Court has not found any case that has interpreted section 523(a)(3)(B) in accordance with its plain meaning. It will, therefore, follow the guidance of legislative history and interpret section 523(a)(3)(B) as providing alternative grounds for denying discharge of a fraud-type debt.

failed to list a creditor's claim in her schedules. She obtained a discharge in her no-asset Chapter 7 case. Then, after her case closed, the creditor obtained a money judgment in state court on his claim against the debtor. The debtor then sought to reopen her Chapter 7 case to amend her list of creditors and obtain a discharge of the creditor's debt. *Id.* at 1530–31. The bankruptcy court allowed the debtor to reopen the case because the judge determined the creditor could not be prejudiced by the debtor's failure to list his debt in a no-asset case because the creditor could still bring a complaint to litigate the dischargeability of the debt, which the bankruptcy court permitted him to do. Finding that the creditor had no grounds to support his claims that the debt was nondischargeable as a debt excepted from discharge under sections 523(a)(2), (4), or (6), the bankruptcy court granted the debtor's summary judgment motion as to the dischargeability complaint. *Id.* at 1531. On appeal to the district court, the district judge affirmed the bankruptcy judge's holding that the creditor could not be prejudiced by the nonlisting of the debt.

The Eleventh Circuit disagreed with what it perceived was a per se rule being applied by the bankruptcy and district courts that the creditor could not be prejudiced by debtor's failure to list the debt if the debtor is permitted to reopen the case, amend its schedules, and obtain a discharge of the debt, so long as the debt is one not excepted from discharge by sections 523(a)(2), (4), or (6). *Id.* at 1533–34. The court first noted that under the old law, the Supreme Court had laid down a near per se rule that if a debtor failed to schedule a known debt, then that debt is not discharged unless the creditor received actual notice in enough time to participate in the administration of the estate. *Id.* at 1533 (citing *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231

(1904)). Next, the court cited a decision under the new law, *Stark v. St. Mary's Hospital (In re Stark),* in which the Seventh Circuit concluded that under section 523(a)(3), even where the debtor failed to omit a known debt, the debtor is permitted to reopen a case and amend its schedules so that it could then obtain a discharge of the debt. *Baitcher,* 781 F.2d at 1533 (citing *Stark,* 717 F.2d 322, 324 (7th Cir.1983)). However, the Seventh Circuit decided that the debtor was only entitled to reopen the case if the omission of the debt was for reasons of honest mistake, not "fraud or intentional design." *Stark,* 717 F.2d at 324. Thus, relying on *Stark,* the Eleventh Circuit assumed that a debtor must reopen their case in order to obtain a discharge. *Baitcher,* 781 F.2d at 1530. The court further ruled that the debtor would only be entitled to discharge if she was able to show that the debt was omitted for reasons other than fraud or intentional design. *Id.* at 1534.

To understand the Eleventh Circuit's conclusion in *Baitcher* holding that a case must be reopened to effect the discharge of an omitted debt, it is necessary to carefully review the Seventh Circuit's decision in *Stark.* The *Stark* court believed section 523(a)(3) denied the debtor's discharge of an innocently omitted debt in all cases. 717 F.2d at 323–24. But they found that the policy of section 523(a)(3)(A) of protecting the creditor's right to file a proof of claim was not furthered because that creditor's right to file a proof of claim still existed in a no-asset case.[6] *Id.* at 324. The debtor, they believed, was being punished without causing any harm. *Id.* at 323. Thus, the Seventh Circuit decided that an equitable remedy could be fashioned by allowing the debtor to reopen the case and amend the schedules so that the court could then prevent the "technical" application of section 523(a)(3)(A) and allow discharge of the omitted, non-fraud-type debt. *Id.* at 324.

**6.** The court understood that section 523(a)(3)(A) was intended to protect a creditor's right to file a claim and participate in the dividend to creditors. *Stark,* 717 F.2d at 324. Troublesome to an understanding of the *Stark* court's reasoning is the court's acknowledgment that, in a no-asset case, the creditor is never deprived of the right because no such filing is required. *Id.* Rather than concluding that section 523(a)(3)(A) is not a

bar to discharge, the *Stark* court decided that section 523(a)(3)(A) was inequitable because it protected a meaningless right. *Id.* at 323. Rather than construct a judicial exception to section 523(a)(3)(A), the *Stark* court should have reached the conclusion, as most courts have since, that section 523(a)(3)(A) does not apply to a no-asset case.

They failed to recognize in their interpretation of section 523(a)(3) that Congress had already provided for discharge of an omitted, non-fraud-type debt in no-asset cases by making section 523(a)(3)(A) inapplicable to them, regardless of the debtor's intent in omitting the debt. Thus, the equitable rule would not have been, and is not now, necessary.

The facts in *Baitcher* were somewhat different. In *Baitcher*, the Eleventh Circuit was faced with an appeal from lower court decisions that had reopened the case to allow the debtor to amend her list of creditors and obtain discharge of the debt. 781 F.2d at 1531. However, it is clear from the Eleventh Circuit's opinion that they disagreed with the lower courts that the debt should be discharged. To begin with, the Eleventh Circuit disagreed with the district court's conclusion that the state court was clearly erroneous in finding that the debt was of the type that could be excepted from discharge under sections 523(a)(2), (4), or (6). *Id.* at 1535. In addition, the Eleventh Circuit found that the lower courts did not consider the intent of the debtor in omitting the debt from her schedules. *Id.* at 1534. The Eleventh Circuit, citing *Stark*, stated that a court should permit discharge of an omitted debt only when the debtor's omission of the debt was not the result of fraud or intentional design. *Id.* The court went on to analyze the facts and concluded that they did, in fact, "suggest intentional design, if not fraud," suggesting that the debt should not have been discharged, but concluding that the case should be remanded for the bankruptcy court to make that determination. *Id.*

At first blush, it would appear that the court's requirement that the lower courts consider the debtor's intent in omitting the debt from her schedules was unnecessary. If the omitted debt was of the type excepted from discharge by sections 523(a)(2), (4), or (6), then it would have been excepted from discharge by operation of section 523(a)(3)(B), regardless of debtor's intent in omitting the debt. However, what the court in *Baitcher* sought to prevent was the result which would have occurred if the debt was found not to be of the type excepted from discharge by section 523(a)(2), (4), or (6).[7] Under section 523(a)(3), in a no-asset case, such an omitted debt would be discharged by operation of section 523(a)(3)(A). The Eleventh Circuit considered this to be an inequitable result if the debtor omitted the debt by fraud or intentional design. *Baitcher*, 781 F.2d at 1534. Thus, they used the rule fashioned by the Seventh Circuit to hold that discharge of the debt could be denied, not by operation of section 523(a)(3), but on the grounds that the debt was omitted by fraud or intentional design.

■ The challenge, then, is to determine how *Baitcher* can be reconciled with the line of cases leading up to *Judd* which hold that reopening a case simply to amend schedules in an effort to receive the discharge of an omitted debt is unnecessary. The cases can be reconciled as follows: "In mandating the nondischargeability of debts unscheduled by fraud or intentional design, *Baitcher* effectively poses a judicially created supplement to the rule of section 523(a)(3)," *In re McDaniel*, 217 B.R. 348, 356 (Bankr.N.D.Ga. 1998) (Drake, J.). While section 523(a)(3) seeks to prevent harm to the creditor in subsection (A) by denying discharge when the creditor was prevented from filing a proof of claim, or in subsection (B), by denying discharge when the creditor was prevented from challenging the dischargeability of a fraud-type debt, the rule in *Baitcher* seeks to protect the creditor when the debtor omits a debt from its schedules in bad faith. Thus, *Baitcher* sought only to fill a gap left under the Code which enabled unscrupulous debtors to obtain discharge of debts of the kind which would have been dischargeable in the case by fraudulently omitting such debts from their schedules, perhaps in an effort to prevent a creditor from participating in the

---

7. The Eleventh Circuit's concern that the debt in question might not be excepted from discharge by section 523(a)(2), (4), or (6) was well placed. Nine years after *Baitcher* was decided, the Eleventh Circuit concluded that a debt arising from failure to obtain statutorily required workers' compensation insurance, the origin of the debt in *Baitcher*, did not give rise to willful and malicious injury, so that it is not excepted from discharge, at least not by section 523(a)(6). *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir.1995).

bankruptcy process.[8] Specifically, *Baitcher* should not be read to hold anything more. *Baitcher* should not be read to require a bankruptcy court to reopen a case to allow a debtor to amend its schedules in order to discharge a debt.

In the light of the Eleventh Circuit's reliance on *Stark*, *Baitcher* has been interpreted as requiring analysis of the debtor's intent in omitting the debt before reopening the case. Close review, however, shows that this is not the holding of the case. The Eleventh Circuit created the supplement to section 523(a)(3), but did not specifically state when or how it was to be applied. Courts and parties alike within the Eleventh Circuit have applied the rule as though it is a condition to reopening, but careful consideration of the rule points to the conclusion that this is not a consistently useful application of the rule. Consider the debtor who fraudulently omits a non-fraud-type debt from his schedules in a no-asset case. No provision of section 523 excepts such a debt from discharge. Thus, what harm could come to the debtor for fraudulently omitting the debt if the *Baitcher* decision is interpreted as a rule that is limited to the issue of whether or not the bankruptcy court should allow the case to be reopened? If either party seeks to reopen the case to challenge the dischargeability of the debt, the bankruptcy court would find that the debtor fraudulently omitted the debt and refuse to reopen the case. If the credi-

tor then seeks to collect the debt in state court and the court properly interprets section 523, it will find that the debt is discharged. Thus, the only time such a rule would work a result not already provided by section 523(a)(3) is in the case where a state court erroneously applies section 523(a)(3)(B) and declares a discharged debt nondischargeable. If the request to reopen the case comes after the entry of the state court judgment, the rule would then operate to deny the debtor relief from the bankruptcy court by refusing to allow the case to be reopened, thereby validating the erroneous state court decision to hold the debtor liable for the debt. Surely the Eleventh Circuit would not rely on state courts to make erroneous decisions to vindicate their policy of discouraging fraudulent omission of creditors by unscrupulous debtors.

The foregoing suggests that what the Eleventh Circuit intended to do in *Baitcher* was require consideration of the debtor's intent in omitting the debt *after* the bankruptcy court has reopened the case. Further, the Eleventh Circuit made clear that this analysis is to occur before the court applies section 523(a)(3) analysis. *Baitcher*, 781 F.2d at 1535 ("[T]here are other obvious difficulties with applying the three involved sections of section 523(a) [referring to sections 523(a)(2), (4), and (6) considered in applying section 523(a)(3)(B)].... Of course,

---

**8.** This equitable rule applied by the Eleventh Circuit in *Baitcher* might seem unnecessary. Section 523(a)(3) does not provide for consideration of the debtor's state of mind. 11 U.S.C. § 523(a)(3); *McDaniel*, 217 B.R. at 355 n. 13. This is because any fraudulent intent on the part of debtor in omitting the debt is addressed by section 727(d)(1). Section 727(d)(1) provides for revocation of a discharge if the discharge was obtained through fraud of the debtor. 11 U.S.C. § 727(d)(1). Thus, the inequitable result feared by the Eleventh Circuit could be remedied by filing an action under section 727(d)(1). Their would be no need for the equitable rule.

However, the rule in *Baitcher* is distinct from, and in addition to, the revocation provision in section 727(d)(1). First, the creditor has the burden of proving debtor's discharge should be revoked under section 727(d)(1). *Baitcher* puts the burden on the debtor to "show absence of fraud or intentional design" to keep its discharge. *Baitcher*, 781 F.2d at 1534. Second, a revocation under section 727(d)(1) reinstates all

of the debtor's debts. *Wood v. Cochard (In re Cochard)*, 177 B.R. 639, 643 (Bankr.E.D.Mo. 1995). *Baitcher* allows the court to reinstate just the omitted debt rather than all of debtor's debts. Finally, section 727(e) provides a statute of limitations for bringing revocation from discharge actions under section 727(d)(1). Such actions must be brought within one year after the discharge was granted. 11 U.S.C. § 727(e). Because the creditor's debt was omitted, thus depriving it of knowledge of the bankruptcy case, it is possible for this deadline to pass before the creditor even learns of the debtor's discharge, thus depriving the creditor of its remedy. The rule in *Baitcher* is not subject to a statute of limitations. Thus, even if the discharge is not challenged until more than a year after it occurred, the court could still deprive the debtor of the discharge of the fraudulently omitted debt. Therefore, it is clear that the rule in *Baitcher* provides a remedy which is distinct from the one provided under section 727(d)(1).

those sections are never reached if it is concluded the original omission was not inadvertent but by intentional design."). Thus, proper application of the *Baitcher* rule works to fill the gap left by section 523(a)(3) by preventing discharge of non-fraud-type debts to debtors who fraudulently omit such creditors from their schedules.

■ The following question then arises: If, as this Court has concluded, 1) section 727 discharges all debts not excepted by section 523, 2) this discharge is final when entered, and 3) subsequent events, such as amending schedules upon reopening the case to add an omitted debt, do not change what debts were or were not discharged by that discharge, under what circumstances would a bankruptcy court reopen a case to consider a question about the dischargeability of an omitted debt so that it could consider the debtor's intent in omitting the debt as required by *Baitcher?* This question was answered by the first court to note the futility of opening a case simply for the purpose of amending schedules in *In re Anderson,* decided by the Bankruptcy Court for the District of Minnesota. 72 B.R. 495 (1987). After finding that a debt, whether listed or not, is conclusively discharged or conclusively not discharged at the time of discharge, that court went on to observe, however, that "it is not always obvious which debts were excepted from the discharge and which debts were not, and therefore there may have to be a judicial determination of which debts were excepted from discharge." *Id.* at 496. Because the discharge has already taken place, the relief sought from the court by the parties after the case has closed is not an order to discharge the debt, but rather a declaratory order that the debt was or was not already discharged. *Id.* at 497.

■ There are three ways to litigate this issue after the case is closed:
First, if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the [d]ebtor or the creditor can move to

reopen th[e] case for the purpose of filing a complaint to determine dischargeability. Third, the [d]ebtor can bring an action in this Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt.
*In re Mendiola,* 99 B.R. 864, 870 (Bankr. N.D.Ill.1989).

During the state court proceeding, Mr. Keenom informed that court that he had just emerged from bankruptcy with a discharge. In his pro se status, Mr. Keenom may not have been aware of the significance of the discharge he obtained in his Chapter 7 case, but it cannot be said that once the issue of the bankruptcy case was raised, neither the creditor nor the magistrate court was any longer unaware of it. Aware that Debtors had received a discharge in a bankruptcy case, the magistrate court concluded that Mr. Keenom was personally liable on the contract, and entered a judgment entitling All American to collect on the debt resulting from the contract.

This Court heard little from the parties about what transpired during the state magistrate court proceeding. However, the Court presumes that because the magistrate was made aware of Debtors' bankruptcy case, it was aware that Debtors received a discharge of all debts in the bankruptcy case, except those debts exempt from discharge under section 523. This Court also presumes that the magistrate was aware that section 524 of the Bankruptcy Code "operates as an injunction against the . . . continuation of an action . . . to collect . . . any . . . [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Lastly, the magistrate was aware that Debtor had never listed the debt in the bankruptcy case. Therefore, logic compels this Court to conclude that the magistrate, by proceeding to enter a judgment against Mr. Keenom, determined that the debt had not been discharged in Debtors' bankruptcy case. There would be two ways

to have concluded that the debt was not dischargeable in the bankruptcy case. The first would be to conclude that the debt was fraudulently omitted from the case so as to evoke the *Baitcher* discharge exception. The other possibility would be to conclude that section 523(a)(3)(B) operated to except this omitted debt from discharge in Debtors' no-asset bankruptcy case. To reach this conclusion, the magistrate would have to conclude that the omitted debt was "of a kind specified in" sections 523(a)(2), (4), or (6) and that the creditor had no notice or actual knowledge of the Debtors' bankruptcy case in time to file a request for determination of dischargeability of the debt. *Id.* § 523(a)(3)(B).

 As for this second alternative, there remains some uncertainty in the case law over whether a state court has the jurisdictional authority to decide that a debt was excepted from discharge in a bankruptcy case by section 523(a)(3)(B). The difficulty lies in the fact that to do so, the state court must have decided that the debt in question is of a kind specified in sections 523(a)(2), (4), or (6) of the bankruptcy code. It is well established that section 523(c) gives the bankruptcy courts exclusive jurisdiction to decide whether a debt is discharged under sections 523(a)(2), (4), or (6). 11 U.S.C. § 523(c). Further, section 523(c) provides that a bankruptcy court can only decide that issue if the creditor to whom the debt is owed requests that the court do so. Rule 4007(c) provides that the creditor must make such a request within sixty days following the meeting of creditors. Thus, some courts have concluded that because only a bankruptcy court has the jurisdictional authority to decide whether a debt is a section 523(a)(2), (4), or (6) debt, that determination must be made by a bankruptcy court before any state court can determine if section 523(a)(3)(B) applies. *See e.g. Padilla*, 84 B.R. at 196–97. In this case, this Court has never made any such determination, so those courts would conclude that the magistrate court had no jurisdictional authority to decide the debt was excepted from discharge by section 523(a)(3)(B).

 However, courts that follow this reasoning ignore the plain language of sec-

tions 523(c) and 523(a)(3)(B). The plain language of section 523(c)(1) expressly excepts from the jurisdictional and timing limitations of section 523(c) actions taken pursuant to subsection 523(a)(3)(B). *Mendiola*, 99 B.R. at 868 n. 6 (". . . Section 523(c), by its own terms, does not apply to section 523(a)(3)(B) claims."); *Haga v. National Union Fire Ins. Co. (In re Haga)*, 131 B.R. 320, 326 (Bankr. W.D.Tex.1991) (". . . [J]urisdiction is not exclusive for actions brought under § 523(a)(3) because the bankruptcy court shares concurrent jurisdiction with other forums to try such claims."). However, in order to determine whether action should be taken pursuant to section 523(a)(3)(B), the court must conclude that it is faced with a debt subject to section 523(a)(3)(B). Courts holding that bankruptcy courts maintain exclusive jurisdiction under section 523(a)(3)(B) assume that the debts excepted by that section must be actual section 523(a)(2), (4), or (6) debts, and point to the fact that only bankruptcy courts have the jurisdiction to decide whether a debt meets the requirements of those sections on the merits. *Padilla*, 84 B.R. at 196–97. However, section 523(a)(3)(B) excepts from discharge a debt "*of a kind* specified in paragraph (2), (4), or (6)." The language, "of a kind," is important. Congress chose not to provide that section 523(a)(3)(B) only excepts section 523(a)(2), (4), or (6) debts; rather, they chose to provide that it excepts not only section 523(a)(2), (4), or (6) debts, but also debts of that "kind." Therefore, a "trial on the underlying [section] 523(a)(2), (4), or (6) claim on its merits is not appropriate when determining a section 523(a)(3)(B) action; only a showing that a colorable or viable claim thereunder exists is all that should be required." *Haga*, 131 B.R. at 327. Therefore, this Court disagrees with those courts that say only a bankruptcy court can decide whether a debt is discharged under section 523(a)(3)(B). The statutory scheme provides that a state court can decide whether the creditor has a colorable or viable claim that the debt is of a kind specified in sections 523(a)(2), (4), or (6) without intruding on the exclusive jurisdiction of the bankruptcy courts to determine if it actually is such a debt. And if the state court finds the debtor does have a colorable claim under

sections 523(a)(2), (4), or (6) and was deprived of the opportunity to timely request a determination of dischargeability of the debt because he had no notice of the bankruptcy proceeding in time to do so, then such a state court has the authority to declare that the debt was not discharged in the bankruptcy proceeding and proceed to a judgment that the debtor remains personally liable for the debt.

Therefore, the two alternative grounds available to the state magistrate court in deciding that Mr. Keenom was still liable for his contractual debt to All American were, first, that the debt was fraudulently omitted from the schedules per *Baitcher*, and second, that All American had a colorable claim that this debt was either incurred by false pretenses, false representation, or actual fraud of Mr. Keenom (523(a)(2)), or fraud or defalcation while Mr. Keenom was acting in a fiduciary capacity (523(a)(4)), or that it resulted from willful and malicious injury caused by Mr. Keenom (523(a)(6)). Unfortunately, there is good reason to believe that the magistrate's deliberations did not include consideration of any of these issues. The facts do not appear to support the claim that it was fraudulently omitted from the schedules or that the debt was of a kind described in sections 523(a)(2), (4), or (6). This debt resulted from a commercial contract entered into at arms length between consenting parties. It was breached by Mr. Keenom as a result of the collapse of Home Entertainment Systems and Mr. Keenom's erroneous, but reasonable, belief that he was not personally liable for the debt, and further belief that it had been satisfied by the owner of Home Entertainment Systems, his step-brother. In addition, though Mr. Keenom signed the contract, it listed the business name to be advertised as Home Entertainment Systems. Someone who signed such a contract on behalf of their employer could honestly, although incorrectly, believe they were not liable for any debt resulting from breach. In addition, the first letter Debtors received notifying them that the account had not been paid came seventeen months after the contract had been signed. Debtors assumed during that seventeen months that the contract had been satisfied. However, the Court concedes that its findings regarding the facts surrounding this debt are based on the limited evidence presented on Debtors' motion to reopen their case. Debtors, in their motion, simply asked this Court to reopen their case so that they could amend their schedules. It appears that both parties believed that the issue of dischargeability would be decided based on whether the Court allowed the case to be reopened. The parties appeared to believe that the outcome would turn on issues of the good faith of the debtor and prejudice to the creditor. Therefore, All American was never put on notice that it would have to present evidence to support the magistrate court's finding that the debt was nondischargeable. As a result, neither party presented any evidence to this Court on that issue. While there appears to have been no evidence offered to the magistrate court supporting a claim that this debt was excepted from discharge by fraudulent omission or by section 523(a)(3)(B), the Court cannot assume that All American, given the proper opportunity, would be unable to show that the magistrate court considered these matters in rendering its decision.

It is apparent from Debtors' motion that they disagree with the magistrate's determination that this debt was excepted from the discharge they received in their bankruptcy case. Therefore, the relief Debtors seek is, first, to reopen the case, second, a determination by this Court that the magistrate's decision was erroneous, and third, some exercise of power by this Court to enforce the discharge injunction against All American's attempt to collect the debt pursuant to the magistrate's judgment. The bankruptcy court's power to provide such a remedy is granted by section 524 of the Bankruptcy Code.

████ Section 524 provides, in pertinent part, as follows:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title,

whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(1). Thus, the bankruptcy court can void a judgment entered post-discharge in state court that determines the debtor is liable for a debt discharged in his bankruptcy case. 5 KING, COLLIER ON BANKRUPTCY, ¶ 524.02[1], p. 524–13 (15th ed.1995). While it is true that the state courts share concurrent jurisdiction to determine if a debt was excepted from discharge by section 523(a)(3), if the state court's determination that a debt was nondischargeable is clearly erroneous, the bankruptcy courts must have the power under section 524 to void that judgment. The bankruptcy court may exercise this power, however, only when the record from the state court lacks substantial evidence to support its decision. *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir.1989).

It is important to note that a determination by the bankruptcy court that the state court's judgment is void as clearly erroneous does not determine the dischargeability of the debt. It will serve only to declare that the state court's decision was not supported by evidence. If the judgment is clearly erroneous, the debt will continue to be presumed discharged, as it will not yet have been determined to be nondischargeable. The presumption of dischargeability will continue until a determination is made, either by an adversary proceeding in bankruptcy court, or, because they share concurrent jurisdiction regarding the determination of the dischargeability of an omitted debt, in state court.

Further support for the Court's conclusion that it has the power to upset the findings of a clearly erroneous state court judgment on this issue can be found in *Baitcher*. As stated previously, the Eleventh Circuit disagreed with the district court's conclusion that the state court's decision did not have res judicata or collateral estoppel effect because it had been reached in error. Rather, the court found factual support for the state court's findings. *Baitcher*, 781 F.2d at 1534–35. However, in making this observation the Eleventh Circuit lamented, "If the state courts had based their decisions on such a proposition, that federal court records showed to be wholly incorrect, we would have a nice question indeed, which lovers of complication will grieve to know we do not have." *Id.* at 1535. Thus, the Eleventh Circuit was able to avoid the issue of what a bankruptcy court should do with erroneous state court decisions involving discharge, yet implied that some remedy would have been available. Unlike the Eleventh Circuit, however, this Court cannot avoid the issue. The magistrate court's decision was based on a proposition that appears now to have been clearly erroneous. Therefore, "lovers of complication," whom, it would be presumed, have relished in the reading of this complex opinion up to this point, need grieve no more for this Court now finds it necessary to answer this "nice question indeed" as to whether it must enforce the remedy provided by the Bankruptcy Code in section 524.

■ Thus, the Court has before it now an action under section 524(a)(1) to enforce the discharge injunction by voiding a state court judgment that renders Debtors liable on a prepetition debt—a judgment that Debtors believe was clearly erroneous. However, Debtors did not plainly state this request for relief in attempting to reopen this case. Furthermore, neither Debtors, nor All American were put on notice to provide evidence of what the magistrate court heard so as to allow this Court to determine whether the magistrate's decision was clearly erroneous. Thus, the Court is unable, at this time, to declare the magistrate's decision void under section 524(a)(1). The Court will consider Debtors' motion as one asking to reopen the case in order to allow for the filing of an adversary proceeding in which evidence can be presented by the parties as to what evidence was presented in the magistrate proceeding regarding the dischargeability of this debt. This Court would then be able to determine whether the magistrate's decision was supported by the evidence or was clearly erroneous. If the evidence from the trial of that adversary proceeding shows that the state court decision was clearly erroneous, then an order will be entered setting aside the state court judgment.

Next, the Court will address All American's argument that the case should not be reopened because it was forced to incur court costs and attorney fees in the amount of five-hundred dollars in pursuing a collection action in state court because they had received no notice of Debtors' bankruptcy. It is clear that Mr. Keenom did not consider himself liable for this debt. Thus, All American could never have hoped to recover this debt without litigation. The only reason that the state court litigation would not have been necessary, therefore, is if this debt was in fact discharged in Debtors' Chapter 7 case. All American received notice of Debtors' bankruptcy case upon receipt of Mr. Keenom's answer to the state court action. Whether the debt was discharged or whether, instead, it was not discharged because it was fraudulently omitted from the schedules and/or was a debt of a kind specified in sections 523(a)(2), (4), or (6), the magistrate proceeding, though possibly decided incorrectly, was necessary to determine whether All American could collect on the debt. Because it was necessary, the Court finds that All American was not prejudiced in incurring those costs. The prejudice, if any, to All American would result from a finding in this Court that the state court decision was clearly erroneous. Such a prejudice to All American is not chargeable to Debtor, and therefore, does not prevent reopening of this case.[9]

Debtors' Chapter 7 case will be reopened for the purpose of allowing Debtors to file an adversary proceeding on the issue of whether the magistrate's judgment should be declared void pursuant to section 524(a)(1). At the trial, the parties can present whatever evidence they deem necessary and relevant to such a determination. The Court finds that granting Debtors the forum to be heard in their effort to avoid the state court judgment accords them relief within the meaning of section 350(b).

## Conclusion

In conclusion, reopening a bankruptcy case simply to amend schedules to include an omitted debt for the purpose of obtaining a discharge is a futile effort. The discharge or nondischarge of all debts occurs when the court orders discharge before the case is closed. An omitted debt will only be excepted from discharge by section 523(a)(3) and/or, in the Eleventh Circuit, by *Baitcher's* equitable rule denying dischargeability of debts omitted by fraud or intentional design. Because a proof of claim need not be filed in a no-asset case, section 523(a)(3)(A) does not apply in no-asset cases. Section 523(a)(3)(B) only applies if the debt is one of a kind described in sections 523(a)(2), (4), or (6). Because a creditor need only prove that it has a colorable claim that the debt in question is of a kind described by those sections, state courts share concurrent jurisdiction with bankruptcy courts in making that determination. However, if the state court's determination is clearly erroneous, it is subject to being voided by the bankruptcy court pursuant to section 524(a)(1). The proper procedure a debtor should follow to avail itself of this relief is to file a motion with the bankruptcy court to reopen its case so that an adversary proceeding can be filed to determine the question of whether the state court's decision should be voided under section 524(a)(1). If the state court decision is voided, the debtor or creditor may then request a determination as to whether the omitted debt was discharged, either through another adversary proceeding in the bankruptcy court or, because they share concurrent jurisdiction under section 523(a)(3), in a state court.

It is unclear whether the magistrate court had sufficient evidence to determine that this debt was excepted from discharge when deciding that Mr. Keenom remained personally liable for the debt despite his discharge in bankruptcy. In addition, because the magistrate proceeding was necessary, the Court finds that All American was not prejudiced as a result of incurring the costs of bringing that action.

---

9. If Mr. Keenom had not asserted the bankruptcy discharge defense in the state court, choosing to seek relief in this Court instead, we would have another "nice question indeed," as to whether the prejudice to All American would prevent the reopening of this case. As this question is not presented, lovers of complicated questions may resume their grieving.

An order in accordance with this opinion will be entered on this date.